UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JAMES WESLEY McCULLERS** | **CIVIL ACTION NO. 3:10-CV-0130** |
| LA. DOC #503240 | |
| VS. | **SECTION P** |
| | **JUDGE DONALD E. WALTER** |
| **LARRY COX, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff James Wesley McCullers, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on January 21, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Madison Parish Detention Center (MPDC), and he gives the address as 158 Treatment Plant Road, Tallulah, Louisiana; however, when he filed his complaint he was incarcerated at another Madison Parish Detention Center located at 196 Old Hwy. 65 South, Tallulah. He complains of conditions of confinement at both institutions and contends that his transfer to the present facility was an act of retaliation. He sued Madison Parish Sheriff Larry Cox, Wanda Nolan, LPN, and the "Madison Parish Department of Corrections" requesting $15,000,000 and free medical attention. In an amended complaint filed on April 5, 2010, he added a defendant, Antonio Johnson. [Doc. 10]  In a pleading filed on March 16, 2010, he requested an injunction ordering his transfer to another facility. [Doc. 6]

These matters have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court.  For the following reasons it is recommended that the complaints, including the motion

for injunctive relief, be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint*

Plaintiff is an inmate in the custody of the LDOC. When the original complaint was filed he was incarcerated at the MPDC on Old Hwy. 65 South. He complained that he does not drink water and his requests to be served an alternative beverage were denied. He also claimed that he has no teeth and he has requested that the State furnish him dentures at no charge since he is indigent. He complained that he has been placed on a diet which denies him salt and pork and which provides only soft foods. He claims that he lost over 10 lbs. in one week because of this diet. He claimed that during a previous incarceration at this facility in 2006, "... my prostate went bad[,] shut my kidneys down[,] nurse let me go a [week] without urinating[.] Doctor put me on cordura 4 mg[1] after installing a [Foley] catheter..." Plaintiff claimed that upon his return to this facility he began to experience the same problem and this time, the Nurse allowed him to go four days without urinating. He was apparently brought to the E.A. Conway Hospital in Monroe where health care providers recommended the installation of another Foley Catheter. He complained that he is charged for "soap, stamps, envelopes, hygiene items..." that should be furnished free of charge; he also complained that the facility "... is nasty, unsanitized, and [unfit]

---

[1] Plaintiff is probably referring to Cardura ® or doxazosin, a medication sed in men to treat the symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH), which include difficulty urinating (hesitation, dribbling, weak stream, and incomplete bladder emptying), painful urination, and urinary frequency and urgency. Doxazosin (Cardura) is also used alone or in combination with other medications to treat high blood pressure. Doxazosin is in a class of medications called alpha-blockers. It relieves the symptoms of BPH by relaxing the muscles of the bladder and prostate. It lowers blood pressure by relaxing the blood vessels so that blood can flow more easily through the body. See Medline Plus, a Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs & Supplements, http://www.nlm.nih.gov/medlineplus/druginformation.html

for medical conditions as mine..."

In a supplemental complaint filed on the same date he complained that on January 18, 2010, kitchen workers neglected to bring his food tray. He asked the guards to check into the situation and they refused. Later on, plaintiff asked Pastor Stanley Dubois for assistance in getting food and within 45 minutes plaintiff was given his tray of food. However, that evening, at suppertime, his tray was again omitted and he went without a meal that night. He complained that there is no "free person" in the kitchen to oversee the inmates who work there.

## 2. *Amended Complaint and Request for Transfer [Docs. 5, 6, and 7]*

On March 12, 2010, plaintiff advised the Clerk that he had been moved to the MPDC located on the Treatment Plant Road in Tallulah as retaliation for filing the instant suit. [Doc. 5] On March 16, 2010, he again advised of his move and alleged, "They moved me from a medium security building to [where] the police like putting [their] hands on inmates..." He requested an injunction to be moved to another facility. He also complained that, although he was previously given bottom bunk status, he was now forced to occupy a top bunk. [Doc. 6] He provided the following exhibits: (1) A "Staff Alert" from the MPDC Medical Department dated March 1, 2010, authorizing bottom bunk status for plaintiff [Doc. 7, p. 7]; (2) a Diet form dated January 6, 2010, authorizing an HTN/GERD diet – "no added salt, bland, baked only, no Koolaid, no pork" and only "soft" foods [Doc. 7, p. 8]; (3) an Inmate Grievance Form complaining of an incident on March 3 as follows, "The nurse moved me back here. I'm bottom bunk status. I tried to show the guards my paper work. So know I'm sending a copy along with my law suit to the courts. Something's fixing to get done with this place I promise." He requested that Nurse Nolan be terminated from her employment for failing to do her job.

### *3. Amend Order [Doc. 9] and Response [Doc. 10]*

On March 23, 2010, plaintiff was ordered to amend his complaint. [Doc. 9] On April 5, 2010, plaintiff submitted his amended complaint and therein alleged that on or about March 2, 2010, Major Antonio Johnson demanded that plaintiff "...sign off of my medication..." but plaintiff refused.

On the following date, March 3, 2010, kitchen staff served him a plate of rice and butter. When he complained he was told to eat it or "do without." Plaintiff chose the latter option and missed that meal.

He alleged that he submitted grievances directed to the Sheriff, but the deputies do not deliver the grievances.

On March 14, 2010, plaintiff wrote to Nurse Nolan to get his prescription filled. The following Thursday (March 18) plaintiff was examined by Dr. Neuman. Plaintiff weighed 142 lbs. According to plaintiff he weighed 165 lbs. when he entered into custody. Plaintiff asked the physician to order something other than water for plaintiff to drink. The physician refused. Plaintiff, however, refuses to drink water and as a result of his "improper diet" he has experienced weight loss, dehydration, and malnutrition.

Plaintiff alleged that he has had surgery on his right foot and left arm and has had a cancer removed from between two toes. According to plaintiff this has resulted in the physician ordering bottom bunk status, however, plaintiff claims "... Nurse Nolan (LPN), Larry Cox, Antonio Johnson retaliated against me and moved me from (MPDC) to (MCC) [and] they put me on a top bunk..." all of which has resulted in plaintiff suffering a "strain" of his left arm and extra pressure on his foot. He also complains that his medication coupled with being assigned a top

bunk has resulted in dizziness.

## *Law and Analysis*

### *1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). Federal courts, with regard to prisoner

suits filed *in forma pauperis*, are authorized "... to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff filed an original complaint. Since the original complaint was deficient, plaintiff was instructed to amend his complaint to provide additional information. He was instructed to provide specific information and to provide the names of each defendant who violated his Constitutional rights. He was further instructed to describe what each defendant did and to provide the date and place of the occurrence. He filed an amended complaint and provided sufficient information to resolve his complaint. No further amendment is necessary.

## 2. Juridical Person

Plaintiff sued the "Madison Parish Department of Corrections." Fed. R. Civ. P. Rule 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether an entity the "Madison Parish Department of Corrections" has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such

as a corporation or partnership." La. Civ.Code Ann. art. 24. The "Madison Parish Department of Corrections" is not a juridical person and therefore plaintiff's claims against this defendant must be dismissed as frivolous.

### 3. Limitations

The district court is authorized to dismiss a claim as frivolous "it is clear from the face of a complaint filed *in forma pauperis* that the claims asserted are barred by the applicable statute of limitations." *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993). A district court may raise the limitation period *sua sponte*. See *Harris v. Hegmann,* 198 F.3d 153 (5th Cir. 1999).

The Supreme Court has held that the statute of limitations for a §1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1984). However, the date of accrual for a §1983 claim is a question of federal law. *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Longoria v. City of Bay City*, 779 F.2d 1136 (5th Cir. 1986). "Under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Piotrowski*, 51 F.3d at 516, quoting *Vigman v. Community National Bank and Trust Co*., 635 F.2d 455, 459 (5th Cir. 1981). A plaintiff need not realize that a legal cause of action exists but only that the facts support a claim. See, *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

In his original complaint, plaintiff complained of an incident that occurred during his previous incarceration in 2006. The Fifth Circuit has approved application of Louisiana's one-

year personal injury statute of limitations provided by La. Civ.Code Ann. art 3492 in a §1983 action. *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980). To the extent that plaintiff complains of this, or any other incident that occurred during his previous incarceration in 2006, such claim is clearly prescribed and should be dismissed as frivolous.

*4. Diet*

In both his original complaint and his amended complaint, plaintiff complained that he does not drink water and the defendants have refused to provide an alternative beverage. He also complained about the soft diet which, according to him, has resulted in the loss of 10 lbs. of weight. He also complained that he missed two meals – once on January 18, 2010 and again in March 2010 when he refused to eat rice and butter.

As to the latter complaint, the fact that an inmate misses an occasional meal does not necessarily implicate the inmates's constitutional rights. See *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir.1999); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986); see also *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir.1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period.").

Plaintiff has alleged that he missed two meals. He clearly did not face a substantial risk of harm because of these incidents. Thus, he has failed to state a cognizable claim against defendants arising from his deprivation of two meals. Compare *Oladipupo v. Austin*, 104 F.Supp.2d 626, 640 (W.D.La. 2000).

Plaintiff also complains about the diet he is on. The Constitution mandates that detainees and inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.' " *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir.1986) (quoting *Smith v. Sullivan*,

553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); see also *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996) ( per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food.").

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.' " *Talib v. Gilley*, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.*

Here, plaintiff does not allege that he was denied anything close to the "minimal measure of life's necessities..." Nor did he allege any specific physical harm resulting from the defendants' alleged dietary failures. He has provided only conclusory allegations concerning the adequacy of his diet and such conclusory statements are insufficient to state a claim for which relief may be granted. In addition, it appears that the diet he has been provided was ordered by a physician in response to plaintiff's health problems. [Doc. 7, p. 8] The plaintiff's disagreement with the diet or treatment recommended by a health care professional does not establish deliberate indifference and thus cannot support a civil rights claim. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Finally, his complaint concerning his refusal to drink water is manifestly frivolous. Clearly plaintiff's health problems – including his inability to urinate for four days – are more than likely the result of his bizarre refusal to drink water and are not due to the restricted diet or inadequate medical care.

*5. Medical Care*

Plaintiff raised a number of medical care claims. He argued that the State should provide him with dentures because he is indigent; he claimed that he was allowed to go four days without urinating before he was taken to E.A. Conway Hospital where a Foley Catheter was installed; and, he complained that although he has been afforded bottom bunk status, he now has to sleep in a top bunk.

Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, in order to prevail, the plaintiff must plead and then show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that <u>they subjectively intended that harm occur</u>. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994). Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*,

239 F.3d 752, 756 (5t Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials '<u>refused</u> to treat [the prisoner], <u>ignored</u> his complaints, <u>intentionally</u> treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).

Plaintiff's allegations – accepted as true for the purposes of this analysis – fail to establish deliberate indifference on the part of any of the named defendants or anyone else. He has not shown that defendants, or anyone else "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any <u>serious medical needs</u>.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d at 756 (5th Cir.2001).

Furthermore, plaintiff was directed to amend his complaint and to specify the harm or injury resulting from the alleged constitutional violations. With regard to the loss of bottom bunk status, plaintiff claims only that he has experienced a "strain" of his left arm and some pain in his foot. Likewise, he has not shown that the defendants have disregarded any serious needs with regard to his request for dentures. Finally, he alleged no injury or harm resulting from the delay

in providing him hospitalization.

Further, to the extent that plaintiff complains that he is charged for medical services, such an allegation fails to state a claim for which relief might be afforded. The policy or procedure he complains of is apparently a "co-pay" policy or fee-for-service program which requires inmates to bear part of the cost of their medical treatment. Courts have found these polices constitutionally permissible if they do not interfere with timely and effective treatment of serious medical needs. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy)*; Shapley v. Nevada Bd. of State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.) (co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md.1995) (co-pay policy). See also *Hudgins v. DeBruyn*, 922 F.Supp. 144, 151 (S.D.Ind.1996) (prison policy which provided that inmates could obtain over-the-counter medicine at cost from institution commissary or as part of necessary treatment for serious medical condition did not constitute cruel and unusual punishment even though former policy generally provided medication free of charge in conjunction with inmate's use of sick-call process; inmate's serious medical needs would be met whether inmate was indigent or not).

Simply stated, nothing in Constitution guarantees inmates the right to be entirely free from costs associated with medical care. *Reynolds*, 128 F.3d, at 175. It is only when necessary medical care is denied to impecunious inmates that the Eighth Amendment is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992) (affirming district court finding that statute with no exceptions to the co-payment requirement would be unconstitutional because it

would deprive an inmate of meaningful access to medical care); *Johnson*, 885 F.Supp. at 820 (holding statute constitutional "because the policy mandates that no one shall be refused treatment for an inability to pay, [and] the co-pay policy will not result in a denial of care, even for inmates who abuse the system"). While plaintiff complains of the policy, he does not allege that any needed medical services or medications were denied to him.

Finally, plaintiff alleged that Antonio Johnson tried to force plaintiff to discontinue some unspecified medication. However, plaintiff refused. It thus appears that plaintiff was not prejudiced by the actions of Mr. Johnson.

### *6. Retaliation*

Plaintiff claims that his transfer from his former place of confinement to his present place of confinement was an act of retaliation resulting from plaintiff having filed the instant suit. It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Plaintiff, however, alleges no factual basis in support of the conclusory allegation that his transfer from one prison to another was an act of retaliation. Standing alone, the contention is frivolous. See *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir.1988).

Furthermore, while retaliation claims under § 1983 are permitted, indeed encouraged, in order to ensure that prisoners are not discouraged from exercising rights guaranteed by our

Constitution (see *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir.2006)), nevertheless, some so-called retaliatory acts, even those clearly motivated by retaliatory intent, are so *de minimis* that they would not deter an ordinary person from further exercise of his rights. *Id.* Such *de minimis* retaliatory acts do not rise to the level of constitutional violations and thus cannot form the basis of a § 1983 claim. *Id.* The retaliatory adverse act complained of herein was a transfer from one prison to another and clearly, the transfer did not deter plaintiff from exercising his rights. This alleged "adverse act" was *de minimis* and would be unlikely to, and indeed, did not, discourage plaintiff from exercising his right to litigate his claims and otherwise complain about conditions of confinement.

Finally, plaintiff himself complained of conditions of confinement at the former prison, referring to the place as "... nasty, unsanitized, and [unfit] for medical conditions as mine..." [Doc. 1] He has made no such complaints about the place of his present confinement,[2] and therefore plaintiff's retaliation complaint is clearly without a basis in fact.

### *7. Request for Transfer*

Plaintiff has requested an injunction directing the defendants to transfer him to another institution. However, a prisoner has no constitutional right to be housed in a particular facility. *Olim v. Wakinekona*, 461 U.S. 238, 244-46 (1983). Pursuant to *Procunier v. Martinez*, 416 U.S. 396 (1974), the decisions of a state prison administration are given wide discretion regarding the operation of prison facilities. Plaintiff's request for an injunction directing his transfer must also be denied.

---

[2] He did complain that he was transferred from a "medium security building to [where] the police like putting [their] hands on inmates..." however, he has never alleged that he was the victim of force at the hands of prisons officials at his current place of incarceration.

*Conclusion and Recommendation*

**IT IS RECOMMENDED** that plaintiff's civil rights complaint (42 U.S.C. §1983) seeking damages and injunctive relief be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers at Monroe, Louisiana, April 29, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

15